UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY FRANCES CASALE,

                              Plaintiff,

        -v.-                                            1:04-CV-1013
                                                        (LEK/RFT)
ARMAND REO, Superintendent,
Enlarged City School District of
Troy, New York, *et al.*,

                              Defendants.

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

        In August 2004, Plaintiff Mary Frances Casale ("Plaintiff" or "Casale") brought this claim

against the Enlarged City School District of Troy, NY ("District"), members of the Board of

Education of that school district and several of its employees ("Defendants"). Dkt. No. 1. Plaintiff

asserts violations of constitutional and statutory rights, relating to retaliation against Plaintiff for

reporting misbehavior by a teacher. Id. Plaintiff alleges that Defendants' actions constituted

retaliation in that they transferred her to a different position, denied her additional sick leave and

denied an extension of her leave of absence. On July 13, 2005, the Court granted in part

Defendants' Motion to dismiss Plaintiff's Complaint. Dkt No. 40. The claims that remain against

the District, Board of Education and the individual Defendants in their official capacities are

Plaintiff's first and sixth causes of action, claims that she was transferred and denied an extended

leave of absence in retaliation in violation of Title IX, Section 1681 *et seq.,* of Title Twenty (20) of

---

[1] For printed publication by the Federal Reporters.

the United States Code.  Also, Plaintiff's fifth and ninth causes of action, claims under New York

Human Rights Law ("NYHRL") that she was denied additional sick leave and an extra leave of

absence, remain against the individual Defendants in the individual capacities only.  Plaintiff's First

Amendment claim of retaliation, her tenth cause of action, also remains against all Defendants.

Order (Dkt. No. 40) at 18.

Currently before the Court is Defendants' Motion for summary judgment on the remaining

claims. Dkt. No. 63.

## II.  Discussion

A.      Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits...show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P.

56 (c).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a moving for summary judgment,

the court must view the evidence and draw reasonable inferences in the light most favorable to the

nonmoving party.  Scott v. Harris, 127 S.Ct. 1769, 1774 (2007).

B.      Violations of New York's Human Rights Law

Plaintiff's fifth and ninth causes of action assert that she was discriminated against by the

individual Defendants because of her disability, in violation of NYHRL, in that she was denied use

of a sick leave bank and denied an extension of her leave of absence.  Complaint (Dkt. No. 1) at ¶¶

95-99, 129-133.  Under NYHRL, it is "an unlawful discriminatory practice" for an employer to

2

discriminate against an individual in the terms, conditions or privileges of employment because of the individual's disability, among other things.  N.Y. Exec. Law § 296(1)(a).  However, in all aspects of NYHRL dealing with employment, the term disability "shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held."  N.Y. Exec. Law § 292 (21).  Plaintiff notes in her Complaint that, as she argued successfully to the Social Security Administration, she has been totally unable to work from August 6, 2003 to the present.  Complaint (Dkt. No. 1) at ¶ 80.  Plaintiff first requested accommodation in January 2004. Id. at ¶¶ 76-79.

NYHRL does not protect an employee who "even upon the provision of reasonable accommodation, is physically unable to perform his or her duties."  N.Y. Exec. Law § 296 (3-a)(g). Dantonio v. Kaledia Health, 732 N.Y.S.2d 322, 323 (N.Y.App. Div., 4th Dept. 2001).  See also Hendler v. Intelecom USA, Inc. 963 F.Supp. 200, 210 (E.D.N.Y. 1997).  In light of Plaintiff's own admissions of total disability, she is not covered by NYHRL.  Also, as Defendant correctly points out, Plaintiff's successful argument to the Social Security Administration that she is totally disabled and unable to work precludes her claims under NYHRL.  Mem. of Law in Supp. of MSJ (Dkt. No. 63) at 12-14. Accordingly, Plaintiff's fifth and ninth causes of action must be dismissed as to all Defendants.

C.     Retaliation Claims under the First Amendment

Plaintiff's tenth cause of action asserts a violation of her rights under the First Amendment of the United States Constitution, pursuant to Section 1983 of Title 42 of the United States Code. Plaintiff alleges that the actions taken against her by Defendants constituted retaliation for

3

complaints she made and were in violation of her constitutional right to free speech.  Complaint

(Dkt. No. 1) at ¶¶ 136-146.

To survive a motion for summary judgment on a retaliation claim based on the First

Amendment, a plaintiff must show (1) that she engaged in protected First Amendment activity, (2)

that she suffered an adverse employment action and (3) that there was a causal connection between

the protected activity and the adverse employment action.  Dillon v. Morano, 497 F.3d 247, 251 (2d

Cir. 2007) (citing Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir.

2006)).  "If a plaintiff makes a sufficient showing of each of these elements, summary judgment is

not appropriate unless the defendant establishes as a matter of law that he would have taken the

same adverse employment action even absent the protected conduct."  Id.

       1.      Did Plaintiff Engage in Protected Speech?

The speech at issue is Plaintiff's role in an investigation of the allegedly inappropriate

behavior of a teacher at Doyle Middle School.  Both parties agree that Plaintiff did not initiate the

complaint, but was interviewed as a witness after another teacher's aide, Carole Lockrow,

complained.  Plntf's Stmnt of facts (Dkt. No. 78) at ¶¶ 30-45.  Defendant argues that, because

Plaintiff did not make any report about the behavior until she was approached by Defendants, her

speech was not protected, because it was merely part of her job responsibilities.  Motion for

Summary Judgment (Dkt. No. 63) at 16-17.  In contrast, Plaintiff asserts that the speech was

protected because she was not ordered to speak and it was a matter of public concern.

Public employees enjoy protection from retaliation for the exercise of their first amendment

rights.  Garcetti v. Ceballos, 126 S.Ct 1951, 1957 (2006).  However, this protection is limited:

employees' speech is only protected if the employee spoke as a citizen, on a matter of public

concern.  Id.   If the speech is protected, there is still no constitutional violation if there was an

adequate justification for the employer's action, such as if the injury to the employer from the

speech outweighs the employee's interest in expressing herself.  Id. (noting that "[g]overnment

employers, like private employers, need a significant degree of control over their employee's words

and actions; without it, there would be little chance for the efficient provision of public service.").

　　　In evaluating whether an employee's speech was made as a public citizen, and thus

protected, the United States Supreme Court has held that "when public employees make statements

pursuant to their official duties, the employees are not speaking as citizens for First Amendment

purposes, and the Constitution does not insulate their communications from employer discipline."

Id. at 1960.  Plaintiff's involvement in the complaint and investigation, as seen from her own

statement of facts, was that she was named as a witness by the complainant, Ms. Lockrow, was

approached and interviewed by Defendant Dembo, and cooperated with the interview, describing

her observations of the teacher's behavior.  Plntf.'s Stat. of Facts (Dkt. No. 78) at ¶¶ 166-170.  The

fact that Plaintiff's involvement was as a witness, rather than the original complainant, is not

determinative; witness reports can constitute protected speech.  See Konits v. Valley Stream Cent.

High Sch. Dist., 394 F.3d 121, 125 (2d Cir. 2005).  Instead, the important inquiry is whether

Plaintiff's speech was pursuant to her official duties.

　　　There is some evidence that Plaintiff's speech was pursuant to her professional

responsibilities.  Plaintiff states that, during the investigation, Plaintiff was told by a District

representative that "as a District employee, she was a mandated reporter."  Id. at ¶ 171.  This same

belief, that Plaintiff's participation is required, is reflected by Linda Hillje, President of the CSEA

Local 871, the union which represents Plaintiff.  Hillje Affidavit (Dkt. No. 68, ex. B) at ¶ 11.

However, there is not enough in the record to show that Plaintiff was actually required to participate, or that she believed she was required to participate, as opposed to merely being told, after the fact, that it was her duty.  At this posture of the case, Plaintiff, as the non-movant, is entitled to all ambiguities resolved and inferences drawn in her favor.  McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).  Although Plaintiff may have difficulty disputing that her participation was required, she is entitled to attempt to convince a jury that she was speaking as a concerned citizen, not an employee.

Additionally, the Court agrees with Plaintiff that the speech at issue, concerning a teacher's potentially sexually inappropriate behavior with her students, is a matter of concern to the public at large.  School districts are entrusted with the children of a community and bear the responsibility of protecting the health and safety of those children.  See Bd. of Educ. of Indep. Sch. Dist No. 92 of Pottawatomie County v. Earls, 536 U.S. 822, 830 (2002).  Both as a District employee and a citizen, Plaintiff shared that responsibility.  To the extent that her speech, her participation in the investigation, was motivated by that shared responsibility, she cannot be punished for it.  Accordingly, Defendants are not entitled to summary judgment on the ground that Plaintiff did not engage in protected activity.

> 2.       Did Plaintiff Suffer an Adverse Employment Action?

Plaintiff alleges that several different decisions constituted adverse employment actions against her in retaliation for her protected speech: the transfer from Doyle Middle School to the special needs classroom at Carroll Hill Elementary, the denial of Plaintiff's request for use of the sick bank, and denial of an extension of Plaintiff's leave of absence.  Complaint (Dkt. No. 1) at ¶ 137.

"While our cases …have recognized a number of employment actions that we have characterized as adverse, we are guided by the general rule that 'whether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination.'" Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006)) (finding that denial of emeritus status did not constitute adverse action). See also Dillon, 497 F.3d at 254 (upholding the district court's decision that "the transfer to the Elder Abuse Unit, the assignment of organizing the evidence room, and [the plaintiff's] exclusion from certain meetings" did not constitute adverse employment action in violation of an attorney's free speech rights.) An action is understood to be adverse for purposes of a first amendment retaliation claim if the action "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights...." Zelnik, 464 F.3d at 225 (quoting Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)). See also Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006) ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (discussing a retaliation claim under Title VII) (internal citations omitted).

a.     First Transfer

Firstly, it must be determined whether claims regarding this potentially adverse action are timely. Plaintiff learned of the decision to transfer her on June 16, 2001, but did not learn until after August 30, 2001 where she was being transferred to, the Behavioral Management Classroom at Carroll Hill Elementary. Plntf.'s Mem. of Law (Dkt. No. 77) at 14. Plaintiff asserts that the statute

of limitations should run from September 5, 2001, when the Board of Education formally voted to approve the transfer.  Id.  The present action was filed on August 24, 2004 and is subject to a three-year statute of limitations.  Complaint (Dkt. No. 1); Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Deters v. City of Poughkeepsie ("Deters"), 150 F. App'x. 10, 10 (2d Cir. 2005) (summary order) (noting that "the statute of limitations for Section 1983 claims in New York is three years").

The statute of limitations begins to run when the claim accrues.  Deters, 150 F. App'x at 10.  Accrual occurred when Plaintiff received notice of the adverse action, not when the transfer actually took place.  Id.; Tadros v. Coleman, 898 F.2d 10, 12 (2d Cir. 1990).  According to her statement of facts, Plaintiff was notified on June 15, 2001 that she and Ms. Lockrow would be transferred out of Doyle Middle School.  Plntf.'s Stat. of Facts (Dkt. No. 78) at ¶ 181.  This was the day after Plaintiff and Ms. Lockrow spoke to district officials as part of the investigation of a teacher's inappropriate behavior.  Id. at ¶¶ 166, 178.  It was also, according to Plaintiff, the day after the meeting between District officials and the teacher under investigation, with her husband.  Id. at ¶¶ 121-122, 174.  Plaintiff admits that, at the time, she was upset about the transfer and found the timing of the transfer "unusual," particularly in that transfers were usually decided over the summer, when school was not in session.  Id. at ¶ 182; Hille Aff. (Dkt. No. 68) at ¶13.  At that time, Plaintiff confronted the District official, asking if she was being transferred because of her participation in the investigation.  Id. at ¶ 184-185.

From these facts, it is evident that Plaintiff was aware of the transfer, its possibly adverse nature, and its possible connection to her participation in the investigation in June 2001.  Accordingly, to be timely, Plaintiff's retaliation claim would have had to be filed by June 2004.

8

Because it was not, Plaintiff cannot sustain a retaliation claim based upon her transfer from Doyle

Middle School to Carroll Hill Elementary, regardless of the merits.

                    b.         Second Transfer

Plaintiff was transferred again for the 2002-2003 school year, from Carroll Hill Elementary

to School 14, an elementary school, where she was placed in a classroom with emotionally disturbed

children.  Complaint (Dkt. No. 1) at ¶ 32.  Plaintiff argues that this transfer was an additional

adverse action against her in retaliation for her participation in the investigation.  Id.

Plaintiff admits that she was originally to be transferred to Troy High School for the 2002-

2003 school year and requested to be given a position at an elementary school, knowing that that

school was School 14.  Plntf's Stat. of Facts (Dkt. No. 78) at ¶¶ 24-28, 126-127.  Plaintiff also

admits that "the District has the right to transfer teachers' aides to a position wherever there is

need." Id. at ¶ 53.  Also, she acknowledges that the need for teachers' aides is determined by State

mandates and the requirements of students' Individual Education Plans, which were constantly

changing.  Id. at 86, 101-103.  These facts establish that frequent transfers were a typical and

expected part of Plaintiff's job as a teacher's aide.  Plaintiff herself had been "assigned to at least six

(6) different classrooms taught by five (5) different teachers" while she was at Doyle Middle

School.  Id. at ¶ 105.

Clearly, Plaintiff cannot argue that her transfer to School 14 was adverse or would be

thought to be adverse by any reasonable employee such that it would prevent them from engaging in

protected speech.  To the extent that Plaintiff is arguing that the kind of students in her new

classroom made the transfer adverse, she also cannot make that showing.  Plaintiff has not shown

that teachers' aides have any entitlement or reasonable expectation to be in classrooms without

emotionally disturbed students.  Nor has she shown that her assignment at School 14 was worse than her previous assignments: Plaintiff explicitly admits that the work at her new placement was equivalent in difficulty to her work at Carroll Hill.  Id. at 64. [2]

For the foregoing reasons, Plaintiff's claim of retaliation based upon her second transfer as an adverse action cannot survive summary judgment.

           c.      Sick Leave Bank

Plaintiff also asserts that adverse action was taken against her in retaliation for protected speech when Defendants denied Plaintiff additional sick leave, after she had exhausted the sick leave time she had accumulated.  Complaint (Dkt. No. 1) at ¶ 137.  Plaintiff notes that she went on sick leave on September 25, 2002 and exhausted her available leave on September 23, 2003.  The Complaint notes that the District and the union representing Plaintiff at the time, CSEA Rensselaer County Educational Local 871, maintained a sick leave bank, which could be accessed to allow employees additional sick leave, subject to the approval of the Board of Education.  Id. at ¶¶ 47-55.  Plaintiff's filings indicate that the sick leave bank is a mechanism through which other Union

---

[2] In a related proceeding, the Workers' Compensation Board, after hearing testimony by Plaintiff, Defendant Dembo, and another district employee, held that Plaintiff's first and second transfers were "lawful personnel decisions taken in good faith by the employer."  Plntf.'s Stat. of Facts (Dkt. No. 78) at ¶ 146.  The Workers' Compensation Board was reviewing Plaintiff's compensation claim for the job stress she experienced at School 14.  A necessary predicate issue in that review was whether Plaintiff's transfers were lawful personnel decisions taken in good faith.  Upon finding that they were, Plaintiff's stress could not be considered an "injury" under Workers' Compensation law.  Mem. in Opp. to MSJ (Dkt. No. 77) at 3.

    Defendant argues that that decision should collaterally estop the Court's current analysis.  Mem. in Supp. of MSJ (Dkt. No. 63, Attach. 7) at 8-10.  Plaintiff raises a credible argument that the issues in the two proceedings are not identical and, accordingly, estoppel should not apply.  Mem. in Opp. to MSJ (Dkt. No. 77) at 4.  However, because the Court has determined that neither transfer is a valid adverse action for the purpose of this claim, it is not necessary to decide whether collateral estoppel applies.

members can contribute up to three days of sick time, to allow the bank recipient to remain on the District payroll.  Records of Sick Leave Bank (Dkt. No. 73, Ex. R) at 52-53.  There is no statute of limitations problem with this claim.

Defendants argue that Plaintiff had no entitlement to a sick leave bank and show that there is no provision for such a benefit in her contract.  Nonetheless, if a sick leave bank is an informal benefit routinely granted to similar employees, then the denial of that benefit can be adverse action for the purposes of a retaliation claim. See Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998) (noting that "the scope of the prohibition [against retaliation] is not limited to economic or tangible discrimination, and that it covers more than terms and conditions in the narrow contractual sense.") (internal citations omitted).

Plaintiff has submitted evidence that sick leave banks were approved for other similarly situated employees and that no other request to create a sick leave bank was denied during Defendant Reo's term.  Hallje Aff. (Dkt. No. 68, Attach. 2, Ex. B) at ¶¶ 37-38.  Because denial of a sick leave bank is likely to have a material impact on an employee, it could dissuade a reasonable employee from participating in a future investigation or making other protected speech.  Accordingly, Plaintiff has shown that the denial of a sick leave bank can be an adverse employment action.

                d.      Leave of Absence

Plaintiff asserts that when Defendants denied her request for an additional year of leave of absence, it was an adverse action in retaliation for engaging in protected speech.  Complaint (Dkt. No. 1) at ¶¶ 101-111.  After Plaintiff exhausted her sick leave in September 2002, she applied for a leave of absence, which was granted through June 2003.  Mem. in Supp. of MSJ (Dkt. No. 63,

Attach. 7) at 5.  Thereafter, Plaintiff requested and was granted an additional leave of absence, through June 2004.  Id.; Complaint (Dkt. No. 1) at ¶ 104.  Plaintiff requested an additional year of leave, through June 2005.  Complaint (Dkt. No. 1) at ¶ 105.  In response to a request for advice, the Civil Service Commission, City of Troy, notified the District that the maximum leave possible was until January 16, 2005, and even this extension of leave was only possible if the District petitioned the Commission and the Commission granted the request.  Plntf.'s Stat. of Facts (Dkt. No. 78) at ¶97; Mem. in Supp. of MSJ (Dkt. No. 63, Attach. 7) at 5.  Plaintiff argues that the District's decision not to petition the Commission to obtain that extra six months of leave was a retaliatory adverse action.  Complaint (Dkt. No. 1) at ¶ 111.

However, Plaintiff has not shown that this action is adverse.  Unlike the sick leave bank, which Plaintiff has shown had been granted to other employees, Plaintiff has not shown that any other employees of the district were granted leaves of absence for the amount of time requested by Plaintiff.  While many employees were granted numerous leaves of absence, none were of the continuous duration that Plaintiff requested.  Leaves of Absence (Dkt. No. 73, Attach. 2, Ex. S).  At the time Defendants declined to recommend additional leave, Plaintiff had already received two consecutive years of leave.  In contrast, most of the leaves granted, according to the District records, ranged from one day to six months.  Id.  Plaintiff has not identified even one employee who received more than two (2) years of consecutive leave.  Accordingly, no jury could find that refusing to recommend a third consecutive year of leave would dissuade a reasonable employee from engaging in protected speech.  Plaintiff cannot sustain a claim of retaliation based upon this action.

   3.  Was There a Causal Connection between the Protected Conduct and Adverse

     Action?

  In denying in part Defendants' Motion to dismiss, the Court noted that Plaintiff "appears to

have an upward battle in proving causation" with respect to any of her retaliation claims, but

because there may be facts establishing a connection between any adverse action and her

participation in the investigation, "the issue is better resolved on a motion for summary judgment or

at trial." 2003 Order (Dkt. No. 40) at 18.  Unfortunately, Plaintiff has not put forth facts that

establish a connection between her speech and any adverse employment activity.  At this stage,

without such a showing, Plaintiff's claim cannot survive summary judgment.

  Plaintiff's involvement in the investigation took place in June 2001. She was transferred to

Carroll Hill Elementary immediately afterwards.  The only timely and potentially adverse action

that Plaintiff has asserted is Defendant's refusal to create a sick leave time bank.  This action took

place between January-July 2004, between two and three years after Plaintiff's speech.  Complaint

(Dkt. No. 1) at ¶¶ 52-55, 104-108.  A significant amount of time passed between these events and

Plaintiff has presented no evidence that raises an inference or direct evidence of a causal

connection.  Plaintiff argues for an inference of retaliatory intent by asserting that Defendant Reo

had knowledge of her protected speech and by attempting to undermine his credibility in general.

Mem. in Opp. to MSJ (Dkt. No. 77) at 19.  However, these vague allegations do not provide a

sufficient basis for any reasonable jury to find a causal connection between the refusal to create a

sick bank and Plaintiff's involvement in the investigation.  Without meeting this element, Plaintiff's

First Amendment claim cannot survive summary judgment and must be dismissed.

D.    Retaliation Claims Under Title IX

Plaintiff's fifth and sixth causes of action are very similar to her first amendment claims.  In those causes of action, Plaintiff asserts that she suffered adverse action in retaliation for exercising rights protected by Title IX.  Complaint (Dkt. No. 1) at ¶ 41.  As with Plaintiff's First Amendment retaliation claims, the protected activity is Plaintiff's involvement in the investigation.  Id.

To make out a retaliation clam under Title IX, a plaintiff must show "1) that she was engaged in protected activity by opposing a practice made unlawful by [that statute], 2) that the employer was aware of that activity, 3) that she suffered adverse employment action; and 4) that there was a causal connection between the protected activity and the adverse action."  AB ex Rel. CD v. Rhinebeck Cent. Sch. Dist., 224 F.R.D. 144 (S.D.N.Y. 2004) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 79 (2d Cir. 2001).  Accordingly, the analysis of Plaintiff's Title IX retaliation claim is almost identical to her First Amendment retaliation claim.  For the same reasons as discussed above, Plaintiff's Title IX claim cannot survive summary judgment.  She has not made a showing of a causal connection between any protected activity and any adverse action.  Thus, her claim must be dismissed.

**III.  Conclusion**

By dismissing Plaintiff's claims, the Court does not aim to undermine her concerns about students or the value of her participation in the investigation of such behavior.  By taking such action, Plaintiff was fulfilling her duties to the District and the community.  However, despite the importance of her actions, Plaintiff's case must fail, as she has not established that any adverse action was taken against her in retaliation for her speech, within the statutory time.

14

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 63) is **GRANTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.


**IT IS SO ORDERED**.


DATED:       November 07, 2007
             Albany, New York


Lawrence E. Kahn
U.S. District Judge

15